## Mercer et al. v. Coleman, Auditor of Public Accounts.

(Decided February 12, 1929.)

TURNER & CREAL, LESLIE W. MORRIS and THOS. B. McGREGOR for appellants.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

A. M. Mercer and Vernon Shuffett were opposing candidates in the election in November, 1927, for a seat in the House. On the face of the returns, Shuffett received the certificate of election, and when the Legislature met was permitted to qualify and take his seat. Mercer instituted proceedings for a contest, which were duly heard in the House. Mercer and Shuffett each employed attorneys to represent him in the contest. Proof was taken by each of them, and on final hearing the contest was decided in favor of Mercer, and he was seated as a member of the House. The House then duly adopted a resolution appropriating to Mercer the sum of $300 to pay his attorneys for legal services rendered in preparing and prosecuting his contest, and the further sum of $32.50 to pay examiner's fees and other costs incurred by him in the contest, making a total of $332.50. It also appropriated $300 to pay Shuffett's attorneys and the further sum of $32.50 for his costs, making a total of $332.50 to him. These sums were directed to be paid as a contingent expense incurred by the House at its 1928 session and to be certified to the auditor for payment. The clerk of the House duly certified the claims, but the auditor, acting upon an opinion of the Attorney General, refused to draw his warrant on the treasury for them. Thereupon Mercer and Shuffett brought this suit against the auditor to obtain a mandamus requiring him to draw the warrant for the payment of the claim. He demurred to the petition. The circuit court sustained the demurrer and, the plaintiff failing to plead further, dismissed the action. The plaintiffs appeal.

By section 27 of the Constitution the powers of the government of the state are divided into three departments, the legislative, executive, and judicial. By section 29 the legislative power is vested in a House of Representatives and a Senate, which together shall be styled- the General Assembly. Section 38 provides: "Each house

of the generel assembly shall judge of the qualifications, elections and returns of its members, but a contested election shall be determined in such manner as shall be directed by law.''

Pursuant to this provision, section 1532, Kentucky Statutes, provides: ''When the election of a member of the general assembly is contested, that branch thereof to which he belongs, within three days after its organization, shall in like manner select a board of not more than nine nor less than five of its members for determining the contest, which board shall be governed by the same rules, have the same power, and be subject to the same penalties, as would the board to determine the contested election of governor, and shall report its decision to that branch of the general assembly by which it was appointed for its further action.''

Sections 1533 and 1534, which apply to county and state boards of contest, have been superseded by section 1596a, subsec. 12. But we do not find any subsection of the act which affects in any way section 1535 in so far as it applies to a contest of the election of a member of the General Assembly. Among other provisions of section 1535 are these:

''No application to contest the election of an officer shall be heard, unless notice thereof in writing signed by the party contesting, is given. . . .

''3. Immediately after such notice, either party may proceed to take proof by depositions, under the same rules and regulations that govern the taking of depositions in action in equity, except that no commission shall be required for taking a deposition out of the state. The depositions shall be sealed up by the officer taking them, and directed to the board having power to decide the contest, or to the clerk of the senate or clerk of the house of representatives, as the case may require.

''4. Such depositions properly taken shall be read as evidence before that branch of the general assembly, or the board having jurisdiction of the case; but the former can, in its discretion, call for and hear other proof. . . .

''7. The costs of the proceeding shall be adjudged against the unsuccessful party, and a certificate thereof given by the board, or by the clerk of either branch of the general assembly, as the case

may require. A judgment for the same may be obtained after five days' notice in a circuit or county court.''

In Culbertson v. Prichard, 9 Ky. Op. 619, the court thus stated the reason for this statute:

''It is proper that the unsuccessful party in such cases should pay the costs; and in order to fix the liability and to furnish the evidence upon which a judgment can be rendered for the costs in a judicial proceeding, the legislature or election board is required to adjudge the costs against the unsuccessful party. This statement, with the certificate of the board or clerk, authorized the circuit or county court to render a judgment for the costs. This certificate is made the evidence necessary to maintain the action, and is indispensable.

''It frequently happens in such bodies that the costs, by reason of legislative action, are paid out of the treasury, and therefore the necessity of fixing the liability in the manner pointed out by the statute.''

The provisions of our Constitution are similar to those of the Constitution of the United States. Congress has enacted statutes like that above quoted. The rule under these statutes is thus stated: ''They are convenient as rules of practice, and of course will be adhered to, unless the House in its discretion shall in a given case determine that the ends of justice require a different course of action. They constitute wholesome rules not to be departed from without cause. It is not within the constitutional power of Congress by a legislative enactment or otherwise, to control either house in the exercise of its exclusive right to 'be the judge of the election returns and qualifications of its own members.' '' McCrary on Elections, sec. 373.

The statute, if controlling, would only apply to the legal costs. Attorneys' fees are not a part of the legal cost, and so would not be within the statute. But aside from this, the House, being the sole judge of the election and qualification of its members, has an implied power to take such proof and incur such expenses as may be reasonably necessary for it to decide the contest intelligently. In any contest the House may appoint its own committee to take further proof and may authorize a committee to employ legal counsel to assist them. If, instead

of doing this, where other counsel has been employed and has done the work which the House might well have provided for, there is no sound reason why the House, in its discretion, may not pay for the work which has been done, which saved the committee the expense of doing this work. It is an important public matter who shall constitute the members of the legislative body of the state, which has supreme legislative authority subject to the restrictions placed upon it by the Constitution. A poor man living in a distant part of the state might be slow to incur the expense of defending a contest or of prosecuting one. But the interest of the state being greater than the interest of the individual, the custom has been, both in the Congress of the United States and in the state Legislature, for the House in which the contest is pending to make such appropriation as it sees proper for the expenses of the contest as constituting a proper part of the contingent expenses of the body. The statute really was not intended to change this. It only applies to the legal cost, and it only makes the unsuccessful party liable to the successful party for the legal cost, but it places no restriction upon the House as to what it shall do in the way of allowing for contingent expenses of the body. The practice has been so long and so common that the statute must be read in the light of it, and as not conflicting with the power of the House in which the contest is pending. "A contested election case, whatever the form of proceeding may be, is in its essence a proceeding in which the people—the constituency—are primarily and principally interested. It is not a suit for the adjudication and settlement of private rights simply." McCrary on Elections, sec. 454.

Judgment reversed, and cause remanded for further proceedings consistent herewith.